Hiller Arthur HAYES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17099.

United States Court of Appeals Eighth Circuit.

June 29, 1962.

Before JOHNSEN, Chief Judge, and MATTHES, Circuit Judge.

PER CURIAM.

The conviction of appellant for violation of the Federal Kidnaping Act, 18 U.S.C.A. § 1201, was affirmed by us in Hayes v. United States, 8 Cir., 296 F.2d 657. This action was taken after a thorough consideration, on an exhaustive opinion, and with a representation of appellant by able and experienced counsel. Certiorari was denied by the Supreme Court, 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85, and mandate was thereupon issued by us.

Within ten days, appellant filed a motion under 28 U.S.C.A. § 2255, for vacation of his sentence—a step which seems now to have become an almost automatic and continuous prisoner practice, especially as to sentences of more than five years. The trial court denied the motion without a hearing; allowed appellant, however, to file notice of appeal without payment of fee; but refused him leave to prosecute the appeal in forma pauperis on the ground that it was frivolous. He now requests permission from us so to prosecute the appeal.

Paragraph 2 of the motion alleged the following basis for seeking to have the sentence vacated:

"That prior to, during and following the trial, the petitioner was suffering from mental derangement which was the result of severe beatings and heavy sedation, and a motorcycle accident which occurred in 1945. The condition became progressively worse after the beatings by the police in 1960, and prevented petitioner from being fully aware of the charges against him, therefore rendering petitioner incompetent to prepare an adequate defense."

An affidavit attached to the motion made specification and enlargement on these allegations as follows:

(a) That the Missouri police, who pursued and caught appellant in the

course of the venture involved beat him into unconsciousness; "stomped" on his stomach and back, "until his kidneys were ruptured and freely flowed blood"; and brought about such a condition that he had to be given hospital treatment and heavy sedation.

(b) That, after appellant was turned over to the federal authorities, and through the period that he was kept in the St. Louis city jail as a federal prisoner, there was administered to him "heavy sedation of an unknown narcotic * * * up to and during the entire trial, rendering affiant mentally incompetent to conduct his trial".

(c) That appellant had sustained head injuries in a motorcycle accident in 1945, from which there had never been a full recovery, and these, in conjunction with and by aggravation from the alleged police beatings which occurred on his arrest, prevented him from being fully aware of the charges against him and rendered him incompetent "to conduct or assist at his trial".

(d) "The gist of affiant's allegations is, that until he was received at the U. S. penitentiary, at Leavenworth, Kansas, and was given an opportunity to recover from the severe beatings and the heavy sedation of narcotics, he did not realize that he had been convicted of a serious crime and was sentenced to a long term of imprisonment".

Appellant's assertions that he was not "fully aware of the charges against him" and "did not realize that he had been convicted of a serious crime and was sentenced to a long term of imprisonment", until after his arrival at the Leavenworth Penitentiary, would generally impress as being without substance, when the record of his expressions, conduct and actions in the arraignment, trial and sentencing proceedings is read.

Thus, appellant had stated before the jury, "I am on trial for kidnaping". In his cross-examination of the kidnaped victims, he had engaged in emphasizing that he had not harmed any of them and that, although he had held a gun on them, he had told them that they would not be hurt as long as they obeyed his commands. Also, he assumed to argue to the court that, since a federal offense would not be committed until there had been a crossing of state line, there was no jurisdiction to try him in Missouri but only in Illinois, where the crime had come into existence. Again, when he made his election to represent himself and not have counsel try the case for him, he had stated that he was "standing trial for my life"; that he had theretofore been tried and convicted on a number of other criminal charges, where he had had attorneys represent him; and that on the basis of those experiences he wanted to try his own case, because "I can't do no worse than they did".

The situation was without any room for appellant to deny or contradict the circumstances and facts of the kidnaping events, since the pursuit of him had begun at the time and place that he and his accomplice engaged in the seizure and were undertaking to escape with a use of the victims as hostages, and it had been continuous until appellant's submission to arrest after the Illinois line had been crossed. This reality appellant apparently recognized, as any normal person could be expected to do, for he confined his efforts on the trial to emphasizing to the jury, as indicated above, that none of the victims had been harmed, and to insisting that his female accomplice was not guilty, because she had been under intimidation and dominance by him in what she did. And when in the course of the proceedings, his accomplice pleaded guilty, he protested against the court's allowing her to take this action, declaring that she was "an innocent person" and that his sole object in the trial was to help her and not himself.

It is understandable that the trial court would feel that these facts, as shown by the record of the arraignment

and trial proceedings, together with appellant's further expressions at the time of his sentencing (which included a request by him for the filing of a notice of appeal in his behalf), left no room reasonably to doubt that he was without any impairment of his faculties which had affected his competency to be tried and to represent himself, and that his motion to vacate was therefore not being made in good faith.

But the competency of a defendant to stand trial can involve affecting factors as to which his expressions, conduct and actions on the trial may not be conclusive in their demonstration, so that this question ordinarily is one which will not come within the excusatory provision of 28 U.S.C.A. § 2255, making unnecessary a hearing on a motion to vacate sentence where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief".

In Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835, the Supreme Court summarily vacated a District Court's denial of a § 2255 motion and the Court of Appeals' affirmance thereof, 96 U.S.App.D.C. 117, 223 F.2d 582, in a situation where the question of trial competency had been disposed of on the basis of the motion to vacate, the record of the trial proceedings, and some affidavits appearing in the court files. The case was remanded to the District Court for a hearing on the competency question. To the same effect, see also Smith v. United States, 9 Cir., 259 F.2d 125, 127; Seidner v. United States, 104 U.S.App.D.C. 214, 260 F.2d 732, 733; Smith v. United States, 9 Cir., 267 F.2d 210, 212.

■ Where a prisoner files a motion under § 2255 to vacate his sentence on the ground of mental incompetency at the trial, the court undoubtedly has the right to require him to set forth a sufficient basis of background, incidents, or other elements to give indication of the possibility of such a question. Prisoners, of course, are not entitled and need not be permitted, after their conviction, to make bald charges of mental incompetency to stand trial, for the purpose simply of obtaining an excursion from the penitentiary. But once a prisoner has set out enough in a § 2255 motion to give facial indication of such a possibility in respect to his trial, the court must dispose of the question by a hearing.

■ Here, appellant was claiming in effect that, because of head injuries sustained by him in 1945, and because of beatings inflicted on him in connection with his arrest, narcotic drugs had been administered to him before and during his trial, and that this had affected his faculties at the trial and his ability to represent himself.

These allegations of head injuries, arrest beatings and drug administrations may or may not be true, but they constitute elements, asserted as facts, of such a character as to be able to raise a possible question. Appellant's expressions, conduct and actions on the trial may have capacity to shed some probative light on the question. They cannot, however, of themselves be declared to be legally conclusive that no narcotic drugs were administered to appellant, or that, if any such drugs were administered, they had been of a nature or in an amount which could not have affected his powers and faculties in the trial proceedings.

■ It is hardly necessary to add that certainty as to the lack of any mental effects from drugs upon a defendant in his trial and conviction is a matter of particular judicial solicitude. Cf. Pledger v. United States, 4 Cir., 272 F.2d 69, 70.

Docketing of the appeal without payment of fee is here granted; the order denying appellant's motion is hereby vacated; and the case is remanded to the trial court for a hearing and determination on the basis of his allegations, of appellant's competency to have been tried and to represent himself.

Judgment vacated and cause remanded.